**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND AND SOUTHEASTERN MASSACHUSETTS CHAPTER OF THE NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, | : | |
| v. | : | C.A. No. 08-67S |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION No. 99. | : | |

**LOCAL 99'S PRETRIAL CONFERENCE STATEMENT**

Plaintiff Rhode Island and Southeast Massachusetts Chapter of the National Electrical Contracts Association ("NECA") filed the instant Complaint against International Brotherhood of Electrical Workers, Local Union 99 ("Local 99") seeking to confirm three decisions of the Council on Industrial Relations ("CIR"). Defendant Local 99 filed a Counterclaim alleging that Plaintiff has violated, and continues to violate, the Rhode Island Anti-Trust Law, R.I. Gen. Laws § 6-35-1 et. seq.

NECA and Local 99 are parties to three collective bargaining agreements ("CBAs") governing terms and conditions of employment in the electrical industry. In or about 2007, NECA filed three grievances under the CBAs alleging that Local 99 was failing to require new contractors to post payroll bonds to cover employee wages and payments to the various Local 99 Benefits Funds. The grievances were brought before the CIR and, on or about May 15, 2007, the CIR issued three decisions requiring all contractors to post payroll bonds of between $20,000 and $84,000 in order to perform work under the CBAs. Defendant alleges that enforcement of the awards will violate the

Rhode Island Anti-Trust Law by restraining contractors who are financially unable to post bonds from performing work in the electrical industry.

The Rhode Island Anti-Trust Law, R.I. Gen. Law § 6-35-5 provides, in relevant part,

> The establishment, maintenance, or use of a monopoly, or **an attempt to establish a monopoly**, of trade or commerce by any person, **for the purpose of excluding competition** or controlling, fixing, or maintaining prices, is unlawful.

Id. (Emphasis added). Pursuant to R.I. Gen. Law § 6-35-3(5),

> "Person" means any natural person or the estate of any natural person, or trust or association of persons, whether formal or otherwise, or any corporation, partnership, company, or any other legal or commercial entity.

The purpose of the Law is

> [t]o promote the unhampered growth of commerce and industry throughout the state by **prohibiting unreasonable restraints of trade and monopolistic practices, inasmuch as these have the effect of hampering, preventing, or decreasing competition**. It is intended that as a result the prices of goods and **services to consumers will be fairly determined by free market competition** in activities affecting trade or commerce in this state, including the manufacturing, distribution, financing, and service sectors of the economy

R.I. Gen. Laws § 6-36-2 (emphasis added).

NECA is clearly a "person" within the meaning of the Rhode Island Anti-Trust Law. Further, NECA is violating the Rhode Island Anti-Trust Law by requiring and/or attempting to require employers to post payroll bonds as a prerequisite to working in the electrical industry. Specifically, NECA is violating the law by "attempt[ing] to establish a monopoly… for the purpose of excluding competition." R.I. Gen. Law § 6-35-5. NECA's actions will lessen competition and allow NECA and other wealthy contractors to have a monopoly over the electrical industry. As a result, "services to consumers will

[not] be fairly determined by free market competition." See R.I. Gen. Laws § 6-36-2. Moreover, requiring the posting of payroll bonds restrains employees in their choice of employers. As a result of the decreased pool of employers, employee hours and wages will decline.

Further, NECA's actions are not exempt under either the Rhode Island Anti-Trust Law or section 6 of the Clayton Act, 15 U.S.C. § 17. Clayton Act section 6 excludes human labor from the definition of a commodity and provides that the antitrust laws do not prohibit labor organizations. Section 20 of that Act, along with the Norris-LaGuardia Act, limits the authority of federal courts to enjoin specified union activities. While none of these statutory provisions is phrased in terms of an exemption from the Sherman Act, the Supreme Court has interpreted them generally to waive antitrust liability for unilateral union conduct such as boycotts and picketing. *See H.A. Artists & Assoc., Inc. v. Actors' Equity Ass'n*, 451 U.S. 704, 714-15 (1981); *United States v. Hutcheson*, 312 U.S. 219, 232 (1941). This exemption, known as the statutory labor exemption, does not exempt bilateral activity, such as "concerted action or agreements between unions and nonlabor parties." *Connell Constr. Co., Inc. v. Plumbers & Steamfitters Local No. 100*, 421 U.S. 616, 622 (1975). Further, it does not apply to employers. *See Brown v. Pro Football*, 311 U.S. App. D.C. 89 (D.C. Cir. 1995); *Carpenters Local Union No. 1846 etc. v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 530 (5th Cir. La. 1982) ("These exemptions are for the benefit of employees and their unions, and offer no shelter for the acts of employers.").

Moreover, the so-called labor exemption grants labor unions a limited exemption from antitrust liability. See 15 U.S.C. § 17, 29 U.S.C. §§ 52, 101-115. The exemption is only available provided that unions act in their own self-interest in an area which "is a

proper subject of union concern," and provided that unions do not combine and conspire with non-labor groups. *See United States v. Hutcheson*, 312 U.S. 219, 232, (1941); *see also Intercontinental Container Transport Corp. v. New York Shipping Association*, 426 F.2d 884, 887 (2d Cir. 1970); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 847 (3d Cir. Pa. 1974).

The purpose of the antitrust laws is to outlaw business monopolies; a "monopoly is no less such because" it involves a labor agreement. *Id.* at 811. *See also United Mine Workers v. Pennington*, 381 U.S. 657 (1965) (the union was exposed to liability for the anticompetitive effects of an agreement with large coal producers to establish an industry-wide, all purpose wage scale with a predatory intent to drive small producers out of the market).

NECA's attempt to control the electrical industry is not exempt under either state or federal law because when a party is "looking not merely to terms and conditions of employment but also to price and market control," the labor exemption does not apply. *Allen Bradley Co. v. Local 3, IBEW*, 325 U.S. 797, 799-800 (1945). NECA's actions relate not to the terms and conditions of its members' employment, but rather to the participation of other employers in the marketplace. That NECA's attempt to monopolize the electrical industry may negatively impact employees' wages does not render its actions exempt.

Finally, pursuant to R.I. Gen. Law § 6-35-11,

> [a]ny person or public body, including the United States, who shall be injured in his or her business or property by reason of a violation of the provisions of this chapter may sue in superior court and shall recover **threefold the damages** sustained by him or her, together with **reasonable costs of suit and any reasonable attorneys' fees** that may be granted at the discretion of the court. The reasonable costs of suit may include, but

> shall not be limited to, the expenses of discovery and document reproduction.

Id. (Emphasis added).

Thus, Local 99 is entitled to its attorneys' fees, as well as compensatory and treble damages. Further, Local 99 seeks an order vacating the CIR awards insofar as their enforcement violates the Rhode Island Anti-Trust Law, as well as a declaration that the payroll bond requirement violates Rhode Island law.

Respectfully submitted,
On behalf of Local 99,
By its attorneys,

/s/ Elizabeth Wiens

Elizabeth Wiens, Esq. (#6827)
Marc Gursky, Esq. (#2818)
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Suite C
North Kingstown, RI 02852
Tel. (401)294-4700
Fax (401)294-4702

Dated: May 1, 2008

CERTIFICATION

I hereby certify that I electronically filed the within Pre-Trial Statement on May 1, 2008. The Statement is available for viewing and downloading from the Court's Electronic Case Filing system. Service on Girard Visconti, Esq. has been effectuated by electronic means.

/s/ Elizabeth Wiens