**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**RHODE ISLAND AND SOUTHEASTERN MASSACHUSETTS CHAPTER OF THE NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION**

**v.** **C.A. No. 08-67S**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION No. 99**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the plaintiff in the above-captioned matter, the Rhode Island and Southeastern Massachusetts Chapter of the National Electrical Contractors Association ("NECA") and hereby moves for summary judgment against the defendant, the International Brotherhood of Electrical Workers, Local Union No. 99 ("Local 99"). The within Civil Action is an attempt to confirm an arbitration award pursuant to the provisions of The Labor Management Relations Act of 1947 , 29 U.S.C. § 185(c) ("LMRA").

**FACTS AND TRAVEL**

On or about June 1, 2006, NECA and Local 99 entered into three (3) separate collective bargaining agreements. Each of the three (3) collective bargaining agreements contained a provision setting forth a requirement that every contractor, upon signing a contract with the union and becoming signatory to the collective bargaining agreements, was to produce a payroll bond and a fringe benefit bond. These bonds were and are meant to ensure financial security for the union members in the event that the contractor is unable or otherwise fails to make its monthly payroll and/or benefit contributions. The amount of the bond was to be commensurate with the

size of the contractor. Attached at Exhibit "A" are copies of the aforesaid provisions in the collective bargaining agreements.

In or about 2007, a dispute arose between NECA and Local 99 regarding the union's alleged failure to enforce the bonding requirement among both new and existing contractors. The matter became deadlocked between the parties, and, pursuant to the dispute resolution provisions within the collective bargaining agreements, the dispute was referred to arbitration before the Council on Industrial Relations ("CIR").[1]

On or about May 15, 2007, the CIR issued three (3) decisions, each of which instructed Local 99 to comply with the provisions of the collective bargaining agreements by enforcing the requirement that all signatory contractors post payroll and benefit bonds. The CIR decisions are attached at Exhibit "B."

Following the CIR decisions, Local 99 continued its steadfast refusal to enforce the bonding requirement. On information and belief, the union has taken the position that because certain contractors are unable to procure the bonds, the requirement is therefore unfair and the union can simply ignore it.

Thereafter, NECA became aware that a large percentage of the signatory contractors had never posted a payroll or fringe benefit bond and it became apparent that Local 99 had no intention of complying with the collective bargaining agreements or the CIR decisions. As such, on or about February 27, 2008, NECA filed the within complaint to enforce the arbitration decisions.

In response to the complaint, Local 99 filed a counterclaim alleging that the bonding requirement that had been duly negotiated by the parties somehow resulted in an anti-trust violation.

---

[1] The collective bargaining agreements specify that "[t]he council's decisions shall be final and binding."

Specifically, the union alleges that NECA has endeavored to restrain employers from doing business with Local 99 for the purpose of excluding competition and driving down wages and benefits. Local 99 filed its counterclaim seeking a declaratory judgment that NECA had violated the Rhode Island Anti-Trust Act, an award vacating the CIR decisions, as well as punitive damages.

The union's argument was artful at best and disingenuous at worst. The requirement that signatory contractors post bonds was voluntarily negotiated by the union and NECA equally. Accordingly, Local 99 claimed that NECA violated anti-trust law by attempting to enforce the terms of a mutually binding agreement. Furthermore, as part of its advertising and recruiting campaign, Local 99 continued (and continues) to reference the bonding surety as a bonus of union membership. (Exhibit "C"). Therefore, the union was calling the bond requirement an anti-trust violation on one hand, while contemporaneously advertising its benefits on the other.

On June 12, 2008, the parties held a Rule 16 status conference before Your Honor. At the status conference, Local 99, impliedly acknowledging that the anti-trust claim was standing on thin ice, suggested that it would not be pursuing the counterclaim against NECA, but, rather, would be utilizing the anti-trust claim solely as an affirmative defense.

As described fully below, there exist no questions of any material fact. NECA is entitled to summary judgment enforcing the CIR decisions with respect to the requirement that signatory contractors post payroll and fringe benefit bonds.

## LEGAL STANDARD

***Summary Judgment***

Fed.R.Civ.P. 56(c) provides that "judgment sought shall be rendered if the pleadings, the discovery and siclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law."

The question is whether a genuine issue of material fact exists. An issue of material fact is an issue "supported by such evidence that a reasonable jury drawing favorable inferences could resolve it in favor of the nonmoving party." Shaw's Supermarket, Inc. v. United Food and Commercial Workers' Union, Local 791 AFL-CIO, 268 F.Supp.2d 115, 121 (D.R.I. 2003) (citing Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp., 317 F.3d 16, 19 ((1st Cir. 2003)) (Citations omitted)).

***Review of Arbitration Award***

It is well-established that a district court's ability to review an arbitrator's decision is "severely limited" Shaw's Supermarkets, Inc., 268 F.Supp.2d at 121, and that the court "may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 764 (1983).

Consequently, as the First Circuit has acknowledged, "disputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator. Successful court challenges are few and far between." Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000).

The federal Congress has stated its position that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.." 29 U.S.C. §173(d).

When an arbitrator purports to interpret provisions of a collective bargaining agreement,

the Court should not set aside an award simply because it believes the arbitrator misread the agreement. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987). Even where the Court believes an arbitrator has committed a "serious error," that does not justify overturning the arbitrator's decision. *Id*.

The fundamental inquiry a court need make in reviewing an arbitrator's decision in this context is whether the decision was "plausible," i.e., whether the award draws its essence from the collective bargaining agreement. W.R. Grace, 461 U.S. at 764; Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 10 (1st Cir. 2001).

**ARGUMENTS**

***The Arbitration Awards Should be Confirmed***

The collective bargaining agreement between NECA and Local 99 calls for matters that are deadlocked to be referred to the CIR for dispute resolution.[2] The United States Supreme Court has held that the word "arbitration" need not appear in the collective bargaining agreement for the decision to be treated as such for purposes of enforcement. General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 519 (1963). Instead, so long as the parties have chosen an "instrument for the definitive settlement of grievances," an award stemming from that instrument is enforceable under the LMRA. Id.

Thus, the absence of the word "arbitration" is not fatal to NECA's action to confirm the CIR decisions.

The CIR decisions should be confirmed by this Court because they draw their essence

[2] The dispute resolution provision referencing the CIR is found at section 1.08 of each of the three (3) collective bargaining agreements. (Exhibit "D").

from the collective bargaining agreement. In fact, the decisions do nothing more than instruct that Local 99 is to comply with the provisions of the collective bargaining agreement that mandate the procurement of payroll and benefit bonds. (Exhibit “B”).

The very issue in question herein was recently brought before the First Circuit Court of Appeals. International Assoc. of Bridge, Structural, Ornamental and Reinforcing Iron Workers Union Local #7 v. Associated Gen. Contractors of Mass., Inc., 489 F.3d 75 (1st Cir. 2007). In Local #7, as in the within case, the employer associations sought arbitration for an award requiring the union to enforce the bonding provisions of the applicable collective bargaining agreement. Same as the case at bar, the arbitrator found that the local had not been enforcing the bonding requirement and directed the union to do so. Id. at 77. The union then appealed to the District Court, and subsequently the Circuit Court, in order to have the arbitrator’s decision vacated. In both instances, the decisions were affirmed. The First Circuit noted that the “case concerns a disregard of the bonding requirement itself-which is plainly included in the CBA” and “[g]iven the history of non-enforcement, the arbitrator’s simplified application was within his informed discretion.” Id. at 78.

As in Local #7, the CIR determined–and in fact the union has acknowledged-that there has been a disregard of the bonding requirement. And, likewise, the CIR’s application was within its informed discretion.

Consequently, there exist no questions of any material fact. Th CIR decisions should be confirmed.

***The Union's Anti-Trust Argument is Without Merit***

Local 99 raises an anti-trust argument for the first time in this civil action to confirm an arbitration award.[3] As discussed *infra*, the Court need not address the argument because it was waived when the union failed to raise the issue at the arbitral level. Beyond the evident waiver, the claim lacks any merit and was just recently addressed and dismissed in the same context by the First Circuit.

The union asserts that enforcing the CIR decisions, i.e., the bonding requirement, will restrain contractors who are financially unable to post bonds from performing work in the industry; that NECA seeks to enforce the CIR decisions to unreasonably exclude competition and restrain trade in the industry; that the effect of enforcing the CIR decisions will be to create a monopoly in favor of "NECA and other wealthy contractors"; and that the decisions, if enforced, will restrain employees in their choice of employers, thereby decreasing labor hours and wages.

Section 6-36-5 of the Rhode Island General Laws provides that "the establishment, maintenance, or use of a monopoly, or an attempt to establish a monopoly, of trade or commerce by any person for the purpose of excluding competition or controlling, fixing, or maintaining prices, is unlawful."

The Rhode Island antitrust law is construed in harmony with judicial interpretations of the federal version. H.J. Baker & Bro., Inc. v. Orgonics, Inc., 554 A.2d 196, 204 (R.I. 1989); Auburn News Co. v. Providence Journal Co., 659 F.2d 273, 278 (1st Cir. 1981). The moving party has the burden of demonstrating that the accused possessed monopoly power and the intent

[3] The union first raised the anti-trust argument in the form of a counterclaim against NECA. Subsequently, at a mediation conference before Your Honor, the union verbally withdrew its counterclaim, but insisted that it would be pressing the argument as a defense to NECA's complaint to enforce the CIR's decisions.

to acquire and maintain that power in the relevant product and geographic markets. H.J. Baker & Bro., Inc. v. Orgonics, Inc., 554 A.2d 204 (citing United States v. Grinnell Corp., 384 U.S. 563, 570-571 (1966)). To demonstrate an attempt to monopolize, the moving party must show a specific intent to monopolize and a dangerous probability of success. Id. (citing George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 508 F.2d 547, 550 (1st Cir. 1974)).

In the anti-trust context, summary judgment is appropriate when a plaintiff fails to present evidence to support a conclusion that the alleged anti-competitive conduct is *more probable than not*. UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp., 599 A.2d. 1037 (citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1984). The court will not assume critical allegations. E.g., Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (affirmed dismissal where complaint contained only *general* allegations of conspiracy without providing a context that raised a suggestion of a preceding agreement); In re Elevator Antitrust Litigation, 2007 WL 2471805, *2 (2nd Cir. 2007) (dismissal affirmed where complaint made *sweeping* allegations of fixing prices, allocating markets, conspirator meetings, but spoke in "*entirely general terms* without any specification of any *particular* activities by any *particular* defendant" and consisted of "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever.") (Emphasis added.)

Here, Local 99's anti-trust defense represents nothing more than sweeping, general allegations that enforcing the CIR decisions would somehow restrain competition and cause financial injury to the union, union members, and employers alike. The argument further infers that NECA is somehow utilizing the bond requirement to intentionally restrict the market, despite the fact that the requirement itself was duly negotiated between the parties, and despite the fact

that the union still *advertises* the benefits of such bonds. (Exhibit "C").

The First Circuit recently addressed the same argument in the same context and held that, beyond the fact that "[c]ollective bargaining agreements are in substantial measure shielded from antitrust attack," the union did not "come close to demonstrating that enforcement of the CBA obligations will significantly impair competition in any relevant market." Local #7, 489 F.3d at 79.

Likewise, here Local 99 has failed to show, in fact *cannot* show, that the CIR decisions mandating that the union comply with the collective bargaining agreements translate into intentional restraint of competition on behalf of NECA.

Lastly, Local 99 has waived any anti-trust argument. This particular matter was voted on, deadlocked, and arbitrated before the CIR. Not once prior to the within action did Local 99 raise the anti-competition argument. As the First Circuit has stated, public policy arguments, such as that before the Court, should be raised at the arbitral level and will otherwise be waived. See id. at 78.

## CONCLUSION

The plaintiff's summary judgment motion should be granted. There exist no questions of any material facts. The only questions present are legal, and should be resolved in the plaintiff's favor. NECA and Local 99 agreed to include a requirement that signatory contractors must procure and produce copies of payroll and fringe benefit bonds. The CIR confirmed that the union must adhere to these procedural requirements. The CIR's decisions were based on the plain language of the collective bargaining agreements. Therefore, the CIR decisions should be confirmed by this Court.

Further, the union's last gasp anti-trust argument is unavailing and should be rejected. The union cannot produce any evidence to support the supposition that the bonding requirement is somehow a mechanism created by NECA to intentionally restrict the market and freeze out smaller contractors.

Respectfully submitted,

Plaintiffs,
By Its Attorneys,

/s/ David L. Fine
Girard R. Visconti, Esq. (#0566)
David L. Fine, Esq. (#7368)
Visconti & Boren Ltd.
55 Dorrance Street
Providence, RI 02903
Phone: 401/331-3800
Facsimile: 401/421-9302
grv@viscontilaw.com
dlf@viscontilaw.com

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically on this 15th day of September, 2008 and is available for viewing and downloading to the ECF registered counsel of record:

**Via Electronic Service/ECF:**

Marc B. Gursky, Esq.
Elizabeth A. Wiens, Esq.
Gursky Law Associates
Scrabbletown Office Park
420 Scrabbletown Road, Suite C
North Kingstown, RI 02852

/s/ David L. Fine